UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (CGM) |
| Debtors in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), et al., | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 10-03633 (CGM) |
| HSBC PRIVATE BANK SUISSE S.A., et al., | |
| Defendants. | |

<u>SUR-REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
LIQUIDATORS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

Date: June 30, 2023

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................2

ARGUMENT .........................................................................................................................1

    I.      PBRS's U.S. Correspondent Account Use Supports Jurisdiction........................................1

    II.     PBRS's Newly Cited Evidence Does Not Show Diligence on Madoff to be Irrelevant. ....3

    III.    PBRS's "Execution-Only" Argument Only Underscores PBRS's Purposeful Availment
         of the Forum......................................................................................................................4

CONCLUSION......................................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AXA Versicherung AG v. New Hampshire Ins. Co.*,
   391 F. App'x 25 (2d Cir. 2010) ..................................................................................7

*Caloric Stove Corp. v. Chemical Bank & Trust Co.*,
   205 F.2d 492 (2d Cir. 1953) (L.Hand, J.) ....................................................................7

*Consolidated Edison Co. of New York v. U.S.*,
   221 F.3d 364 (2d Cir. 2000)..........................................................................................7

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998)..........................................................................................8

*Skandinaviska Enskilda Banken AB (Publ) v. Conway*,
   [2019] UKPC 36 ............................................................................................................7

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984)..........................................................................................8

**PRELIMINARY STATEMENT**

In their Opposition, the Liquidators demonstrated with extensive factual support that HSBC Private Bank Suisse S.A. ("PBRS") had ample claim-related contacts with the forum for the Court to exercise personal jurisdiction, including PBRS's purposeful investment in Madoff feeder funds; PBRS's use of U.S. correspondent accounts to receive overpaid redemption monies here at issue; and PBRS's Fund and BLMIS-related diligence. On reply, PBRS argues for the first time that (i) PBRS's U.S. account use is insufficient in light of newly cited discovery and a newly submitted expert declaration; (ii) BLMIS diligence was purportedly irrelevant, in light of newly cited discovery; and (iii) PBRS purportedly was only executing trades on behalf of customers. These belated new arguments go nowhere.

**ARGUMENT**

**I.    PBRS's Newly Submitted Price Declaration Only Underscores Volitional Nature of its U.S. Correspondence Account Use.**

PBRS admits it used two correspondent accounts at HSBC Bank USA, N.A. ("HBUS") for purposes of sending subscription payments to and receiving redemption payments from Sentry. Reply (Dkt. 218) at 5. However, PBRS argues that it "made no specific decision to route *these* payments through its accounts in the United States." *Id*. This statement is belied by the facts. PBRS repeatedly made the decision to use its U.S. correspondent accounts by *sending* subscription monies to Sentry through a U.S. correspondent account and specifically and repeatedly *designating* U.S. accounts in subscription agreements and redemption requests for purposes of receiving redemption payments. *See* Ex. 1[1] at -661; Ex. 39 at -269; Ex. 40 at -827; Ex. 53 at -655; Ex. 54 at ANWAR-CFSE-00872903.

---

[1] Unless indicated otherwise, all exhibits referenced herein refer to those attached to the Declaration of Lena Konanova (Dkt. 212) filed with the Liquidators' Opposition (Dkt. 211).

With a newly submitted declaration of Vance Price, PBRS also attempts to show PBRS had no choice but to use these U.S. correspondent accounts for its Sentry investments and redemptions. *See* Reply at 14-16. But rather than showing there was no choice, Price ends up highlighting reasons to *make* a choice of U.S. correspondent banks over alternative methods for processing U.S. dollar transactions.

As the Liquidators' correspondent bank expert Sara Joyce explained, there were other options for offshore U.S. dollar transaction clearing. Joyce Decl. (Dkt. 213) § E. Rather than disputing this, Price asserts that the two methods described by Joyce are not common (Price Decl. (Dkt. 225) ¶¶ 14, 31)—which Joyce does not discount (noting that "factors of convenience, cost and country risk may have caused a foreign subscriber to choose to use a U.S.-based correspondent") (Joyce Decl. ¶ 10(c)).

Price goes on to explain that regulators would expect the use of U.S.-based correspondent banks (rather than alternate offshore arrangements) for concrete reasons: for example, to avoid credit and operational risk, such as money laundering or terrorism-related risks (Price Decl. ¶¶ 8, 12, 62). But these are reasons to make a choice of U.S. banks, not reasons that no such choice exists; regulators would need not encourage U.S. bank use if such use was mandated.

Moreover, it is the very benefits offered by the U.S. banking regulatory system that factor among the reasons institutions choose to use such banks, as both sides appear to agree. *See* Price Decl. ¶¶ 12, 32, 62-65; Supplemental Declaration of Sara Joyce ("Joyce Suppl. Decl.") ¶ 3. Having chosen to take advantage of the benefits of U.S. regulated banks to execute their wrongful transactions, PBRS can hardly complain of being haled into U.S. courts to answer for it.

Nor can PBRS avoid this conclusion by attempting to rewrite the Liquidators' constructive trust claims. PBRS dwells repeatedly in its Reply on the purported import of a breach of duty, *see*

Reply at 1, 15-18, attempting to obscure the constructive trust claim this Court (Bernstein, J.) actually permitted to go forward: receipt of overpaid redemption monies with knowledge the NAV was inflated.[2] With the claim seen as it actually is, the centrality of the use of U.S. accounts is obvious: the accounts were the means by which PBRS affirmatively chose to receive the overpaid redemption monies targeted here. See Opp. at 23-31.

II.     **PBRS's Newly Cited Evidence Does Not Show Diligence on Madoff to be Irrelevant.**

Citing new evidence on Reply, PBRS also argues that diligence conducted by or for the benefit of PBRS and numerous diligence reports on the Funds that PBRS received, all of which clearly show the Funds' relationship to BLMIS (Opp. Exs. 23-30), do not reflect diligence conducted by PBRS itself[3] and are therefore not jurisdictionally relevant contacts of PBRS. Reply at 6. PBRS misses the mark. PBRS does not deny ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ See Opp. Ex. 2. PBRS ignores that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ See Ex. 3-6.[4] PBRS also takes issue with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[2] By failing to argue in their January 2017 motions to dismiss that the constructive trust claims should be dismissed for purported lack of pleading a breach of duty, see Dkt. 45, 46, PBRS waived any contention that such breach must be pled. Even aside from that waiver, there is no deficiency in how the Liquidators pled the constructive trust claim, but that is an issue to be addressed in the final round of motion to dismiss briefing. Dkt. 149.

[3] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Reply at 6. However, as set forth in the Opposition, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Opp. at 6-7.

[4] PBRS argues that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Reply at 11, 13), ▇▇▇▇▇▇▇▇▇▇▇▇▇ PBRS had ample contacts with the forum and personal jurisdiction is assessed based on the totality of the circumstances.

3

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 7. This New York-directed diligence on the Funds and Madoff, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which PBRS admits it had access to and did access (*see* Reply at 12; *see also* Exs. 23-30), confirms PBRS knew the Fund investments were indirectly going to BLMIS in New York, and more than that, the diligence is relevant to the "knowledge" element of the Liquidators' claims: as the Funds were Madoff feeder funds, knowing BLMIS was a fraud would provide a basis to know the NAV certified by Citco (on which redemptions were calculated) was inflated. *See* Opp. at 33; *see also* Ex. 23 at -502-05; Ex. 28 at -708.

### III. PBRS's "Execution-Only" Argument Only Underscores PBRS's Purposeful Availment of the Forum.

PBRS argues its investment in Fairfield Funds is not a relevant jurisdictional contact, because PBRS was merely executing investments for clients. *See* Reply at 1-4, 7-11. But PBRS agreed, as a condition of investment, that the Funds could treat PBRS itself as absolute owner of the shares, even if PBRS was acting for customers. Specifically, Article 8 of the Funds' Articles provides that the Funds "shall be entitled to treat the registered holder of any share as the absolute owner thereof and accordingly shall not be bound to recognise any equitable or other claim to, or interest in, such share on the part of any other person." Ex. 49, Art. 8 at 7 (Sentry); Declaration of David J. Molton ("Molton Decl."), Ex. 1, Art. 8 at 7 (Sigma).

By executing the Subscription Agreements in its own name (*see* Ex. 1 at -651, -661), PBRS became a registered holder (*see* Ex. 1 ¶ 2 at -651; Ex. 1 ¶ 14 at -655), thereby expressly agreeing to be bound by the Articles, including Article 8. *See* Ex. 1 ¶¶ 1, 2 at -651 (agreement to be bound by the Fund Documents, including PPM and Articles). And while BVI law merits issues are beyond the scope of this motion, the Privy Council has applied the principle reflected in Article 8. *Skandinaviska Enskilda Banken AB (Publ) v. Conway*, [2019] UKPC 36 ¶ 88, available at

4

10-03633-jpm    Doc 251    Filed 06/30/23    Entered 06/30/23 17:18:42    Main Document
Pg 8 of 10

https://www.jcpc.uk/cases/docs/jcpc-2017-0022-judgment.pdf (rejecting argument shareholder was merely acting for beneficial owners, where articles entitled company to deal with registered shareholders as legal owner).

Having agreed to be treated as owner of shares in a Madoff feeder fund, PBRS cannot now express surprise at such investment being a relevant jurisdictional contact for PBRS itself. *See* Opp. at 7-9, 14-19).

Nothing PBRS offers on reply changes that outcome. *First*, because PBRS concedes it received the PPMs (*see* Reply at 3; Hebler Suppl. (Dkt. 233) Decl. ¶ 7) and because it indisputably signed Subscription Agreements binding it to the Articles and PPMs (*see* Exs. 1, 34), PBRS's newfound professions of ignorance regarding the contract documents (*see* Reply at 3), are without legal effect. *See Consolidated Edison Co. of New York v. U.S.*, 221 F.3d 364, 371 (2d Cir. 2000) ("[A] person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms."); *AXA Versicherung AG v. New Hampshire Ins. Co.*, 391 F. App'x 25, 30 (2d Cir. 2010)); *Caloric Stove Corp. v. Chemical Bank & Trust Co.,* 205 F.2d 492, 495 (2d Cir. 1953) (L.Hand, J.) ("[I]f a party to a written contract signs it, he is bound by its terms, whatever these may be, even if he has not read it."). Indeed, PBRS by contract confirmed it "received and read a copy of the [PPM]" and that, in subscribing for shares, it relied upon the information in the Fund Documents (*i.e.* PPM and Articles). Ex. 1 at -654 ¶ 7; Ex. 34 at -233 ¶ 7.

*Second*, because PBRS cannot dispute knowing the Funds were Madoff feeder funds, its bizarre new protestations that PBRS is a separate corporate entity from the Funds and that PBRS cannot exert corporate control over the Funds' investments (*see* Reply at 4, 8-10), miss the point

entirely.[5] It is not the Liquidators' theory of jurisdiction that PBRS could command the Funds to change their investment policies mid-stream and newly select BLMIS. Rather, the Liquidators argue PBRS chose to invest in the Funds *in the first place* knowing the Funds were Madoff feeder funds and thus PBRS's investments would necessarily be indirect investments in BLMIS in New York. Specific jurisdiction does not require more. *See* Opp. at 14-19.[6]

*Third*, PBRS's contention that it may not have been PBRS's "own money" that made its way into BLMIS, *see* Reply at 3, 8-9, is likewise irrelevant. Jurisdiction here does not require *direct* investment into BLMIS or tracing of funds into BLMIS; instead, investment indirectly through Madoff feeder funds, as PBRS accomplished here, is sufficient. *See* Opp. at 14-16 (citing *Picard v. Bureau of Labor Ins.* (*SIPC v. Bernard L. Madoff Inv. Secs. LLC*) ("*BLI*"), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012); *Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Secs. LLC*), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014); *Maxam Absolute Return Fund, L.P.*, 460 B.R. at 118; *cf. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Secs. LLC*, 917 F.3d 85, 105 (2d Cir. 2019); *Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*),

---

[5] Simon Mortimore KC, PBRS's BVI law expert, also declares that "a BVI company's constructive trust claim in respect of property transferred before the commencement of its liquidation is an asset or alleged asset in the liquidation, which the liquidators may try to realize by bringing proceedings in the name and on behalf of the company, but not in his own name." Mortimore Decl. (Dkt. 224), ¶ 9(6). While that assertion is not referenced in the Reply, the Complaint makes clear the constructive trust claims are being pursued by Sentry and Sigma, acting by their duly authorized representatives, the Liquidators. Dkt. 143 at ¶ 145 (p.55).

[6] PBRS's reliance on cases analyzing general jurisdiction (*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) and piercing the corporate veil (*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-21 (2d Cir. 1984) (*see* Reply at 9) have no application to this case. These cases stand for the proposition that the presence of a subsidiary in the jurisdiction does not, in itself, establish a foreign parent's presence in the state for purposes of general jurisdiction (*i.e.* to hold the foreign parent responsible for causes of action unrelated to the defendant's New York activities). These cases do not speak to the issue here, which is whether the Court has specific jurisdiction over PBRS due to PBRS's contacts with New York.

2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022); *Picard v. Barfield Nominees Ltd.* (*In re Bernard L. Madoff*), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022)).

## CONCLUSION

For the reasons set forth above and those in the Liquidators' Opposition, this Court should deny PBRS's motion.

Date: June 30, 2023

Respectfully submitted,

BROWN RUDNICK LLP

*/s/ David J. Molton*
David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for the Plaintiffs Joint Liquidators*

7