**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Fairfield Sentry Limited, et al. | Case No. 10-13164 (JPM) |
| | (Jointly Administered) |
| Debtors in Foreign Proceedings. | |
| FAIRFIELD SENTRY LTD. (In Liquidation), et al., | |
| Plaintiffs, | Adv. Pro. No. 10-03633 (JPM) |
| v. | |
| HSBC PRIVATE BANK SUISSE S.A., et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**A P P E A R A N C E S:**

**Cleary Gottlieb Steen & Hamilton LLP**
*Counsel for Defendant HSBC Private Bank Suisse S.A.*
One Liberty Plaza
New York, NY 10006
By:     Nowell D. Bamberger
          Jeff Rosenthal

**Brown Rudnick LLP**
*Attorneys for the Plaintiffs Foreign Liquidators*
Seven Times Square
New York, NY 10036
By:     Jeffrey L. Jonas
          David J. Molton
          Marek P. Krzyzowski
          Kyle Dorso

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.    INTRODUCTION

Pending before the Court is the motion of the Defendant, HSBC Private Bank Suisse

S.A., ("HSBC Suisse" or "Defendant") to dismiss the Fourth Amended Complaint (the

"Amended Complaint") for lack of personal jurisdiction.  Mot. to Dismiss, ECF[1] No. 170.

The Court held a hearing on the Motion to Dismiss on October 25, 2023 (the "Hearing").  For the

reasons set forth herein, the Court DENIES the Defendant's Motion to Dismiss.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and

the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.).  This Court

concluded that it has subject matter jurisdiction over this and related actions.  See *In re Fairfield*

*Sentry Ltd.*, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018); *see also* Stip. Order, ECF No.

81.  Personal jurisdiction is contested by the Defendant and will be discussed below.

## III.    BACKGROUND

This adversary proceeding was filed on September 21, 2010.  Compl., ECF No. 1.

The Amended Complaint was filed on August 11, 2021, by Kenneth Krys and Greig Mitchell

(the "Liquidators"), as liquidators of Fairfield Sentry Limited ("Sentry") and Fairfield Sigma

Limited ("Sigma") (collectively, the "Plaintiffs") and the foreign representatives of the

liquidation proceedings involving Sentry, Sigma, and Fairfield Lambda Limited ("Lambda," and,

together with Sentry and Sigma, the "Fairfield Funds").  *See* Am. Compl., ECF No. 143.  Via the

Amended Complaint, the Liquidators seek the imposition of a constructive trust and recovery of

---

[1]     Citations to this Court's electronic docket refer to the docket of Adv. Pro. No. 10-03633-jpm unless
otherwise noted.

over $124 million in redemption payments made to HSBC Suisse by Sentry and Sigma.  *Id.* ¶¶ 1, 9, 45.

**A.**  **The BLMIS Ponzi Scheme**

This adversary proceeding arises out of the decades-long effort to recover assets of the Bernard L. Madoff Investment Securities LLC ("BLMIS") Ponzi scheme.  *Id.* ¶ 1.  Defendant allegedly invested into several funds, including Sentry and Sigma, that channeled investments into BLMIS.  *Id.* ¶¶ 2, 5.

Fairfield Sentry was a direct feeder fund in that it was established for the purpose of bringing investors into BLMIS, thereby allowing Madoff's scheme to continue.  *Id.* ¶ 39; *see also In re Picard*, 917 F.3d 85, 93 (2d Cir. 2019) ("A feeder fund is an entity that pools money from numerous investors and then places it into a 'master fund' on their behalf. A master fund— what Madoff Securities advertised its funds to be—pools investments from multiple feeder funds and then invests the money.").  Fairfield Sigma, in contrast, was an indirect feeder fund, established to facilitate investment in BLMIS through Fairfield Sentry for foreign currency.  Am. Compl. ¶¶ 38–39.  BLMIS used investments from feeder funds, like the Fairfield Funds, to satisfy redemption requests from other investors in the scheme.  *Id.* ¶¶ 7–8.  Without new investors, BLMIS would have been unable to make payments to those who chose to withdraw their investments, and the scheme would have fallen apart.  *Id.* ¶¶ 8, 32, 39, 43.

The Amended Complaint alleges that investors received payments on account of their shares in the Fairfield Funds based on a highly-inflated Net Asset Value ("NAV").  *Id.* ¶ 8.  "HSBC Suisse is one such investor."  *Id.*  To calculate the NAV, administrators used statements provided by BLMIS that showed "securities and investments, or interests or rights in securities and investments, held by BLMIS for the account of Sentry."  *Id.* ¶ 41.  In fact, no securities were

ever bought or sold by BLMIS for Sentry, and none of the transactions on the statements ever

occurred. *Id.* ¶ 42. The money sent to BLMIS by the Fairfield Funds for purchase of securities

was instead used by Bernard Madoff to pay other investors or was "misappropriated by Madoff

for other unauthorized uses." *Id*. The NAVs were miscalculated, and redemption payments

were made in excess of the true value of the shares. *Id.* ¶ 44. The Fairfield Funds were either

insolvent when the redemption payments were made or were made insolvent by those payments.

*Id*.

Defendant HSBC Suisse is a corporate entity organized under the laws of Switzerland

with a registered address in Geneva, Switzerland. *Id.* ¶ 33. HSBC Suisse subscribed into

Fairfield Sentry and Fairfield Sigma and received approximately $124,301,366.68 in redemption

payments from the Funds between April 20, 2004, and November 21, 2008. *Id.* ¶¶ 33, 49. At

Defendant's "directions and instructions, some or all of the Redemption Payments were received

at . . . designated United States-based bank accounts." *Id.* ¶ 46.[2]

Bernard Madoff was arrested in violation of federal securities laws on December 11,

2008. *Id.* ¶ 133. The United States Attorney brought criminal charges against him, alleging that

Madoff ran a Ponzi scheme. *Id*. On December 11, 2008, the Securities Exchange Commission

filed an action in the Southern District of New York to halt the continued offerings of securities.

*Id.* ¶ 134. In March 2009, Madoff pleaded guilty to criminal charges against him and confessed

to operating a Ponzi scheme and fabricating statements and trade confirmations. *Id.* ¶¶ 135–36.

Madoff was sentenced to 150 years in federal prison and died in April 2021. *Id.* ¶ 137.

The Amended Complaint alleges that "HSBC Suisse had knowledge of the Madoff fraud,

and therefore knowledge that the Net Asset Value was inflated" when the redemption payments

---

[2]    Exhibits to the Amended Complaint show the dates and amounts of each redemption payment received by
Defendant from Sentry and from Sigma. *Id.* Exs. A, B.

were made.  *Id.* ¶ 149.  The Amended Complaint further asserts that between 2001 and 2008,

Defendant recognized the improbability of the returns from BLMIS, and employees of the

Defendant "continued to identify multiple additional indicia of BLMIS-associated fraud."  *Id.* ¶

150.  These indicia included Madoff's lack of transparency regarding his fees, his improbably

good track record, and his lack of a realistically independent auditor.  *Id.*  Defendant

"continuously failed to take steps to assuage the concerns associated with BLMIS and instead

pushed BLMIS feeder funds on its investors."  *Id.*

**B.  <u>The Prior Litigation and Procedural History</u>**

The Fairfield Funds were put into liquidation in the British Virgin Islands ("BVI") in

2009.  *Id.* ¶¶ 26–28.  The BVI issued orders appointing the foreign representatives, Kenneth Krys

and Greig Mitchell, as liquidators of the Fairfield Funds.  *Id.* ¶ 28.  Pursuant to BVI law, the

"Foreign Representatives are responsible for all aspects of the Funds' business, including

protecting, realizing, and distributing assets for the Funds' estates."  *Id.* ¶ 143.  The Liquidators

initiated proceedings in the BVI against a number of investors who had redeemed shares of the

Fairfield Funds before the collapse of the scheme.  Mem. L. at 5–6, ECF No. 171; *Fairfield

Sentry Ltd. v. Citibank, N.A. London*, 630 F. Supp. 3d 463, 475 (S.D.N.Y. 2022); *see also In re

Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275,

284 (Bankr. S.D.N.Y. 2018) ("Fairfield II").

The Liquidators filed petitions in this Court in June 2010 under Chapter 15 of the

Bankruptcy Code, seeking recognition of the BVI proceedings as foreign main proceedings.  *Id.*

¶ 29.  This Court granted that recognition on July 22, 2010.  *Id.*  All cases filed by the Plaintiffs

were consolidated before this Court in November 2010.  Consolidation Order, Adv. Pro. No. 10-

03496, ECF No. 25.

The Plaintiffs asserted multiple causes of action in those consolidated adversary proceedings including, *inter alia*, mistaken payment and constructive trust.[3]  Compl. ¶¶ 35–84, ECF No. 6;  *see also* 630 F. Supp. 3d at 479.  In October 2011, this Court stayed the U.S. proceedings pending resolution of the BVI proceedings.  Am. Order Staying Redeemer Actions, Adv. Pro. No. 10-03496, ECF No. 418.; *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *3 (Bankr. S.D.N.Y. Aug. 6, 2018).

In April 2014, the Privy Council affirmed dismissal of the Plaintiffs' BVI law claims for restitution based on mistaken payment.  *Fairfield Sentry Ltd. (In Liquidation ) v. Migani*, [2014] UKPC 9 ("*Migani* ").[4]  The Privy Council held that the Plaintiffs' claims for restitution in the BVI to recover redemption payments arising out of transactions governed by the Funds' Articles of Association are governed by BVI law.  *Id.* ¶ 17.  The Plaintiffs' claims to recover redemption payments thus depended on whether it was bound to make those payments under the "true NAV per share, ascertained in the light of information which subsequently became available about Madoff's frauds, or . . . the NAV per share which was determined by the Directors at the time of redemption."  *Id.* ¶ 19.  The Privy Council concluded that the NAV had to be definitively determined at the time of the subscription or redemption.  *Id.* ¶ 21.  The redemption payments made under the NAV were thus not subject to restitution and the payee was not unjustly enriched by receiving funds, even if the amount was mistaken.  *Id.* ¶¶ 18–19.

 After *Migani* was issued, the Plaintiffs allegedly obtained evidence of bad faith of Citco, the Fairfield Fund's administrator, when it issued redemption certificates.  *See In re Fairfield*

---

[3]    Other causes of action included unjust enrichment, money had and received, unfair preferences under BVI's Insolvent Act § 245, undervalue transactions under the Insolvent Act § 246, breach of contract, and breach of the implied covenant of good faith and fair dealing.

[4]    *Migani* is available at https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf and, without numbered paragraphs, on the Westlaw database at *Fairfield Sentry Ltd (In Liquidation) v Migani*, 2014 WL 1219748.

*Sentry Ltd.*, No. 10-13164 (SMB), 2018 WL 3756343, at \*5–6 (Bankr. S.D.N.Y. Aug. 6, 2018).

Plaintiffs moved to amend the complaint, seeking to add allegations that Citco lacked good faith

when it issued certificates for redemptions and was aware that the NAV was inflated at the time.

*See id.* at \*6.  The Plaintiffs argued that the certificates would not be binding under the Funds'

Articles if they were not issued in good faith.  *Id.*

      In December 2018, this Court found that the Plaintiffs could allege bad faith on behalf of

Citco in the U.S. proceedings and could seek recovery of the redemption payments only "where

a Defendant knew the NAV was inflated at the time of redemption."  *Fairfield II*, 596 B.R. at

295.  Of the common law claims, the Court allowed only the Plaintiffs' claims for constructive

trust against the so-called 'Knowledge Defendants' to proceed.  *Id.* at 301 ("The suggestion that

the subsequent disclosure of facts indicating that the valuation was made in bad faith vitiates the

contract and requires restitution lacks support. The only exception concerns the Knowledge

Defendants that received redemption payments with the knowledge that the NAV was wrong. In

those circumstances, the Liquidators may seek to impose a constructive trust.").  In December

2020, this Court ruled that § 546(e) bars Plaintiffs' BVI avoidance claims to recover unfair

preferences and undervalue transactions.  *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at \*1

(Dec. 14, 2020) ("*Fairfield III*").

      Following these decisions, only the constructive trust claims survived.  *Id.*; *In re Fairfield

Sentry Ltd.*, No. 10-13164 (SMB), 2021 WL 771677, at \*1 (Bankr. S.D.N.Y. Feb. 23, 2021)

("*Fairfield IV*"), *aff'd*, 630 F. Supp. 3d 463.  The Liquidators filed a further motion to amend the

complaints against the Knowledge Defendants.  Mot. to Amend, ECF No. 135; Mot. to Amend,

Adv. Pro. No. 10-03496, ECF No. 3737.  On August 5, 2021, this Court granted the motion to

amend the complaint and lifted the stay of the redeemer actions.  Order Granting Mot. to Amend, ECF No. 141; Order Lifting Stay of Redeemer Actions, ECF No. 142.

### C. **The Pending Motion**

The Amended Complaint seeks the imposition of a constructive trust on the redemption payments received from the Fairfield Funds.  Am. Compl. ¶ 155, ECF No. 143.  The Amended Complaint alleges that HSBC Suisse had knowledge of the fraud at BLMIS and therefore knowledge that the NAV was inflated.  Am. Compl. ¶ 149.  "By reason of their receipt of some or all of the Redemption Payments, Defendants have been unjustly enriched to the detriment of Sentry and Sigma and other shareholders and creditors of Sentry and Sigma."  *Id.* ¶ 152.

"Under BVI law, lack of good faith, *i.e.* bad faith, includes wrongdoing by one who acts recklessly as well as one who acts with actual knowledge that he is acting wrongfully or willfully blinds himself to that fact."  *Id.* ¶ 146; 596 B.R. at 293.  As this Court previously found:

> To establish a constructive trust claim under English law, which would apply in the BVI, 'the plaintiff must show, first, a disposal of his assets in breach of fiduciary duty; second, the beneficial receipt by the defendant of assets which are traceable as representing the assets of the plaintiff; and third, knowledge on the part of the defendant that the assets he received are traceable to a breach of fiduciary duty.'

*In re Fairfield Sentry Ltd.*, 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) (quoting *El Ajou v. Dollar Land Holdings Ltd.* [1994] 2 All E.R. 685, 700).

The Amended Complaint alleges that HSBC Suisse purposefully availed itself of the laws of the United States and the State of New York by "investing money with the Funds, knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS, and maintaining bank accounts in the United States at HSBC Bank USA ('HSBC USA'), and in fact receiving Redemption Payments in those United States-based accounts and/or New York-based accounts."  Am. Compl. ¶ 20, ECF No. 143.  The Amended Complaint further

alleges that Defendant "selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, upon information and belief, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption Payments at issue in this action into those accounts." *Id.*

The parties engaged in personal jurisdiction discovery between September 2021 and June 2023. *See* Rosenthal Letter at 7, ECF No. 258. Over 35,000 documents have been produced in discovery by HSBC Suisse in this proceeding and by HSBC Securities Services (Luxembourg) S.A. in adversary proceeding no. 10-03630. *Id.* Fact discovery is ongoing in this case. *Id.* at 2; *see also* Second Am. Scheduling Order, ECF No. 205.

Defendant has moved to dismiss the Amended Complaint for lack of personal jurisdiction, arguing that there are insufficient contacts with the United States to establish personal jurisdiction over Defendant and that exercising personal jurisdiction would be unreasonable. *See* Mem. L. at 3–5, ECF No. 171. Defendant attached to the Motion a memorandum of law and the declaration of George Rajah, director of HSBC Bank USA, N.A. *See id.*

The Liquidators filed an opposition to the Motion and submitted declarations of Lena Konanova and Sara Joyce in support of their opposition. Opp'n, ECF No. 211; Konanova Decl., ECF No. 212; Joyce Decl., ECF No. 213. The Liquidators argue that exercising jurisdiction over Defendant would be reasonable and that Defendant's contacts with the United States in knowingly and intentionally investing in the Fairfield Funds, using U.S. correspondent accounts to invest in and receive payments from Sentry, and other business activities support personal jurisdiction. Opp'n at 2–4, ECF No. 211.

HSBC Suisse filed a reply memorandum and supporting declarations on March 15, 2023.

Reply Mem. L., ECF No. 218; Decls., ECF Nos. 219–26.  On June 30, 2023, the Liquidators

filed a sur-reply, as authorized by this Court, and two supporting declarations.  Sur-Reply, ECF

No. 251; Am. Scheduling Order, ECF No. 244; Joyce Decl, ECF No. 252; Molton Decl., ECF

No. 253.[5]  The Defendant also filed a letter to this Court on October 11, 2023, in which it argued

for the application of the recently-issued decision of the District Court in *Pub. Inst. for Soc. Sec.*

*v. Picard (In re BLMIS)*, No. 22-cv-8741-GHW, 2023 WL 6143985 (S.D.N.Y. Sept. 20, 2023).

Bamberger Letter, ECF No. 263.  The Liquidators filed a responsive letter shortly thereafter.

Letter in Response, ECF No. 264.  This Court reviewed the above filings and held a hearing on

the Motion on October 25, 2023.  *See* Hr'g Tr., ECF No. 266.

## IV.    DISCUSSION

### A.  The Law of Personal Jurisdiction

In order to subject a defendant to personal jurisdiction in the United States, due process

requires that the defendant have sufficient minimum contacts with the forum in which the

defendant is sued "'such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501,

516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"In adversary proceedings, courts must determine whether the defendant has minimum contacts

with the United States, rather than with the forum state."  *Picard v. Fairfield Greenwich Grp. (In*

*re Fairfield Sentry Ltd.)*, 627 B.R. 546, 565 n.13 (Bankr. S.D.N.Y. 2021) (citing *In re Lehman*

---

[5]      Pursuant to various orders of this Court, portions of certain filings and supporting documents were filed under seal.  The Court held a status conference on December 18, 2023, in which the Court informed the parties that certain documents previously filed under seal might be cited, quoted, or otherwise referenced by the Court in this opinion. See Notice of Hr'g, ECF No. 271.  The Court gave the parties the opportunity to withdraw from the record any previously sealed materials that the party did not want to be cited, quoted, or otherwise referenced in the opinion.  No party requested withdrawal of any documents.

*Bros. Holdings Inc.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015)).  "When jurisdiction is satisfied

through Bankruptcy Rule 7004[6], a bankruptcy court need not address its state's long-arm

statute."  *Id.* n.12; *see also Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124

F.3d 619, 630 (4th Cir. 1997).

    An analysis of minimum contacts "focuses on the relationship among the defendant, the

forum, and the litigation," a relationship that "must arise out of contacts that the defendant

himself creates with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotations

omitted).  There are three conditions necessary for the Court to exercise specific jurisdiction[7]

over the non-resident defendant:

> First, the defendant must have purposefully availed itself of the privilege of
> conducting activities within the forum State or have purposefully directed its
> conduct into the forum State.  Second, the plaintiff's claim must arise out of or relate
> to the defendant's forum conduct.  Finally, the exercise of jurisdiction must be
> reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (internal quotation

marks and citations omitted).

    To survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule

of Civil Procedure Rule 12(b)(2), the Plaintiff "must make a prima facie showing that

jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

---

[6]    "The summons and complaint and all other process except a subpoena may be served anywhere in the United States." Fed. R. Bankr. P. 7004(d).  A bankruptcy court may exercise personal jurisdiction over a defendant served under Rule 7004(d) "[i]f the exercise of jurisdiction is consistent with the Constitution and the laws of the United States." Fed. R. Bankr. P. 7004(f).

[7]    Courts recognize "two types of personal jurisdiction: general and specific jurisdiction.  A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. -----, 141 S. Ct. 1017, 1019, 209 L. Ed. 2d 225 (2021) (quoting *Goodyear Dunlop Tires Operations, S. A v. Brown*, 564 U.S 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)).  The Plaintiffs do not allege that the Court has general jurisdiction over Defendant.  *See* Mem. L. at 9, ECF No. 171 ("Plaintiffs do not allege that the Court has general jurisdiction over [Defendant], a Swiss bank that is not 'at home' in the United States, and so Plaintiffs must plead facts supporting the exercise of specific jurisdiction over [Defendant]."); Opp'n at 2 (arguing that the Court's specific jurisdiction is founded on Defendant's contacts with the forum that relate to the claims at issue).

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).

A showing sufficient to defeat a defendant's challenge to personal jurisdiction "varies depending on the procedural posture of the litigation." *Id.* (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Following discovery, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball*, 902 F.2d at 197. "In response to a post-jurisdictional discovery Rule 12(b)(2) motion, 'the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction.'" *Averbach v. Cairo Amman Bank*, No. 19-CV-0004-GHW-KHP, 2023 WL 5016884, at *4 (S.D.N.Y. June 30, 2023) (quoting *Dorchester Fin. Sec.*, 722 F.3d at 85). "Now that jurisdictional discovery is complete, Plaintiffs' burden is different, but it is not heavy." 2023 WL 5016884, at *6 (citing 722 F.3d at 85). "Plaintiffs need only show that their prima facie showing of jurisdiction is factually supported." 2023 WL 5016884, at *6. When considering a motion to dismiss before or after jurisdictional discovery has taken place, "the court must 'construe the pleadings and affidavits in the light most favorable to plaintiffs,' and resolve all doubts, including factual disputes, in the plaintiff's favor." *Id.* at *4 (quoting Ball, 902 F.2d at 197).

**B. Analysis of Purposeful Availment**

"[M]inimum contacts necessary to support [specific] jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68,

82 (2d Cir. 2018) (quoting *Licci, v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir.

2013)).  For specific personal jurisdiction, "'[c]ourts typically require that the plaintiff show

some sort of causal relationship between a defendant's U.S. contacts and the episode in suit,' and

the plaintiff's claim must in some way 'arise from the defendant's purposeful contacts with the

forum.'"  *Charles Schwab Corp.*, 883 F.3d at 84 (quoting *Waldman v. Palestine Liberation Org.*,

835 F.3d 317, 341, 343 (2d Cir. 2016)).  "Although a defendant's contacts with the forum state

may be 'intertwined with [its] transactions or interactions with the plaintiff or other parties . . . [,]

a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for

jurisdiction.'"  *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Walden*, 571 U.S. at 134)

(alteration in original).  "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction." *Id.*

Defendant asserts that "Plaintiffs have elsewhere affirmatively argued" before the District

Court that these claims are "purely foreign" and that "every relevant component of the

transactions at issue here occurred outside the territorial jurisdiction of the United States."  Mem.

L. at 2, ECF No 171; *see also* Pls.-Appellants' Opening Br. for Second Round Appeal at 24,

*Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (S.D.N.Y. July 21, 2021), ECF No.

440 (the "Opening Brief").  The Plaintiffs' Opening Brief concerned the extraterritorial

application of the § 546(e)[8] safe harbor.  *See* Opening Brief at 24. (arguing that the "Bankruptcy

Court erred in holding that Section 546(e)'s safe harbor could apply extraterritorially to shield

---

[8]      Section 546(e) of the Bankruptcy Code prohibits a trustee from avoiding a transfer that is a margin payment
or settlement payment "made by or to (or for the benefit of) a commodity broker, forward contract merchant,
stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or
to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial
participant, or securities clearing agency, in connection with a securities contract. . . ." 11 U.S.C. § 546(e).  "By its
terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re
BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).

from avoidance settled securities transactions that occurred exclusively outside the United

States.").

As another bankruptcy court in this district has stated, the "tests for personal jurisdiction

and extraterritoriality are not the same." *Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am.*

*Israel Corp.)*, 562 B.R. 601, 613 n.14 (Bankr. S.D.N.Y. 2017). In *Spizz*, the bankruptcy court

was able to simultaneously find that the "[t]ransfer was not domestic, and hence, cannot be

avoided" under § 547, while also clarifying that by "attend[ing] meetings in New York around

the time of, and apparently in conjunction with, the commencement of the chapter 11 case," a

defendant may be "subject to specific personal jurisdiction." *Id.* at 613–14.

By arguing in the District Court that the redemption transfers were foreign for purposes

of extraterritoriality, Plaintiffs did not preclude arguing that there were contacts with the forum

for purposes of personal jurisdiction. To determine whether a transaction is foreign or domestic

for analyzing extraterritoriality issues for federal statutes, courts look at whether the "conduct

relevant to the statute's focus occurred in the United States." *RJR Nabisco, Inc. v. European*

*Cmty.*, 579 U.S. 325, 326, 136 S. Ct. 2090, 2094, 195 L. Ed. 2d 476 (2016). To determine

whether personal jurisdiction is appropriate, however, courts analyze a defendant's contacts with

the forum "under a totality of the circumstances test." *Licci*, 732 F.3d at 170 (citing *Best Van*

*Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).

### 1. **Defendant's Use of Correspondent Accounts**

The Plaintiffs point to the Defendant's choice to use correspondent accounts at HSBC

Bank USA, N.A. ("HBUS") as sufficient to establish minimum contacts with the United States.

Opp'n at 23, ECF No. 211. "Correspondent accounts are accounts in domestic banks held in the

name of foreign financial institutions" that are used "to effect dollar transactions." *Licci ex rel.*

*Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 56 n.3 (2d Cir. 2012) (quoting *Sigmoil Res., N.V. v. Pan Ocean Oil Corp. (Nigeria)*, 234 A.D.2d 103, 104, 650 N.Y.S.2d 726, 727 (1st Dep't 1996)).  Plaintiffs allege that Defendant deliberately selected and used these U.S. correspondent accounts to accomplish the harms for which Plaintiffs seek redress.[9]  Opp'n at 23, ECF No. 211.

Defendant argues that the use of correspondent accounts at its affiliate HBUS for receiving redemption payments from Sentry in U.S. dollars does not support minimum contacts with the United States.  Mem. L. at 14, ECF No. 171.  Defendant relies on *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017), to argue that courts in this district "have repeatedly held that use of a correspondent account at a U.S. affiliate does not confer personal jurisdiction on foreign HSBC affiliates."  Mem. L at 15, ECF No. 171.

*Hau Yin To* found no basis for personal jurisdiction over a foreign defendant where the "wiring of funds through New York . . . was passive, rather than 'integral' to the alleged Ponzi scheme" and where the "passage of money through the U.S. bank accounts w[as] merely incidental and not specifically directed by any of the HSBC entities to facilitate the Ponzi scheme."  2017 WL 816136, at *7 n.6.  These facts were contrasted with those presented in *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, N.E.3d 1 (2016), where the New York Court of Appeals "held that the foreign bank was subject to personal jurisdiction in New York because the 'defendants [including the foreign bank] orchestrated the money laundering and that the New York account was integral to the scheme.'"  *Id.* (citing *Rushaid*, 28 N.Y.3d at 68) (alterations in

---

[9]    The use of correspondent accounts concerns only the transfers that originated from Sentry.  Opp'n at 23, ECF No. 211.  The investments in Sigma were in Euros, not U.S. dollars, and therefore did not require the use of U.S. correspondent accounts.  Am. Compl. ¶ 38; *see also* Mem. L. at 4, ECF No. 171.

original).  Furthermore, in *Rushaid*, "there was a scheme in which the foreign bank specifically contemplated wiring tainted funds into a New York account from which corrupt payments were then further distributed to individuals with accounts at the foreign bank."  *Id.*

Defendant cites to *Vasquez v. H.K. & Shanghai Banking Corp. Ltd.*, 477 F. Supp. 3d 241 (S.D.N.Y. 2020) as another case establishing the supposed rule that the use of New York-based correspondent bank accounts does not suffice to establish personal jurisdiction.  Mem. L. at 15, ECF No. 171.  Similar to *Hau Yin To*, the District Court in *Vazquez* distinguished between the "'unintended and unapproved use of a correspondent bank account, where the nondomiciliary bank is a passive and unilateral recipient' of money transfers, and the '[r]epeated, deliberate use that is approved by the foreign bank on behalf and for the benefit of a customer[.]'"  477 F. Supp. at 253 (alteration in original) (quoting *Rushaid*, 28 N.Y.3d at 326–27).

Here, the Liquidators have shown that the Defendant was able to use a foreign-based or a U.S.-based correspondent bank account for its redemption requests and chose the latter.  *See* Joyce Decl. at 6–9, ECF No. 213.; *id.* at 11 ("[S]ubscription agreements for Fairfield Sentry . . . do not contain any requirement that the subscriber utilize a U.S. account to send subscription payments or receive redemption payments."); *id.* at 12 ("Neither the fact that Fairfield Sentry was a U.S.-dollar denominated fund, nor the fact that the subscription agreement instructed subscribers to wire their subscription payments to Sentry's U.S. account, nor the fact that Sentry made redemption payments from its own U.S. account would have prevented a subscriber from making subscription payments from and directing redemption payments to a U.S. dollar account located outside the U.S."); *id.* ("The U.S. dollar was in wide circulation outside the U.S. during the Relevant Period, and many other payment options were widely available and easily accessible during the Relevant Period.").

10-03633-jpm    Doc 272    Filed 01/04/24    Entered 01/04/24 09:10:34    Main Document
Pg 17 of 34

This was no passive endeavor; Defendant "actively used its U.S. correspondent account and Sentry's U.S. account" to transact with the Fairfield Funds. *Id.* at 28. It did so repeatedly, using the accounts to send 55 subscription payments for shares in Sentry and receive 92 redemption payments from Sentry, for a total of at least 147 transactions. *Id.* at 28–29. HSBC Suisse accomplished the conduct at the heart of the Liquidators' claims through its use of the correspondent accounts. The Second Circuit has found the selection and repeated use of in-forum correspondent accounts to perpetrate the alleged violations to support a finding of sufficient minimum contacts. *Licci, v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013).

Defendant next argues that the use of correspondent accounts is the "unilateral activity of another party" and thus not an appropriate consideration when determining whether defendant has sufficient contacts with the forum. Mem. L. at 20, ECF No. 206 (quoting *Helicopteros*, 466 U.S. at 417). As stated above however, the Liquidators have shown through the Joyce Declaration that Defendant actively selected its correspondent accounts as a means of moving funds through New York. *See* Joyce Decl. at 8, ECF No. 213. Defendant was free to designate an account of its choice, inside the United States or outside, to effectuate transfers and chose one based in the U.S. to process subscription payments and receive redemption payments. *Id.* at 9 ("During the Relevant Period, several correspondent banks offered U.S. dollar-correspondent accounts located outside of the U.S."); *id.* at 11 ("[T]he subscription agreements direct subscribers to wire the payments to the Fund's account at HSBC Bank, New York. The subscription agreements further direct the subscribers to identify the remitting bank for those redemption payments. The relevant clauses contain no requirement that the bank utilized for sending subscription payments be based in the U.S.").

Defendant argues that finding use of New York correspondent accounts as a basis for exercising specific jurisdiction over it would lead to disastrous results. *See* Hr'g Tr. at 55:3–11, ECF No. 266. Defendant claims that "every bank in the world that permits customers to transact in U.S. dollars, which is almost all of them, would be subject to personal jurisdiction in New York with respect to all of the underlying claims that involve U.S. dollar payments." *Id.* at 55:4–8.

HSBC Suisse's concern for banks across the globe and for the capacity of the judicial system is unpersuasive. The Second Circuit has stated that "[s]imply transacting in U.S. dollars does not make a defendant bank amenable to suit in New York." *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 643 (2d Cir. 2023); *see also In re Lifetrade Litig.*, No. 17-CV-2987(JPO), 2021 WL 1178087, at *3 (S.D.N.Y. Mar. 29, 2021) (finding that by simply carrying out a transaction in New York "the connection [between the transaction and the claim] would not rise above the 'merely coincidental,' . . . as most large businesses move money through New York at one point or another."). Furthermore, courts in this district have "routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." *Tamam v. Fransabank* Sal, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010); *Licci*, 732 F.3d at 171 ("[W]e by no means suggest that a foreign defendant's 'mere maintenance' of a correspondent account in the United States is sufficient to support the constitutional exercise of personal jurisdiction over the account-holder in connection with any controversy."); *see also Leema Enterprises, Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983) (describing the "mere maintenance" of a correspondent account to mean that the accounts were "unrelated to the fraud alleged" and that there were no other allegations of "affirmative conduct allegedly required of the [defendant] in connection with the contract . . . .").

However, a defendant's selection and repeated use of a New York correspondent account, where the specific selection was at the defendant's direction, can show that the contacts with "New York [are] not random or fortuitous but sufficiently purposeful to satisfy New York's long-arm statute." *Spetner*, 70 F.4th at 640–42. This is true even though "New York remains the 'national and international center for wholesale wire transfers' . . . ." *Id.* at 642 (quoting *Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 370, 568 N.Y.S.2d 541, 570 N.E.2d 189 (1991)). Where a foreign bank alternative may be less attractive to a defendant, that is only further support for the proposition that the purpose of holding the New York correspondent account is "to gain convenient access to New York's financial system." 70 F.4th at 642.

Defendant argues that investing in the Funds at the discretion of and on behalf of its clients does not support personal jurisdiction. Reply at 8, ECF No. 218. Defendant alleges that the investments were non-discretionary and were all made on an "execution only, custodial, client-directed investment." Hr'g Tr. at 37:15–17, ECF No. 266; *Id.* at 38:10–12 (arguing that it "simply received client money and client instructions to purchase the Fairfield fund shares [then] went out and purchased them for clients.").

The Second Circuit has determined that allegations of a "foreign bank's repeated use of a correspondent account in New York on behalf of a client . . . show purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States." *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339, 984 N.E.2d 893, 900 (2012)); *see also Spetner*, 70 F.4th at 640 ("[A] defendant foreign bank's 'repeated use of a correspondent account in New York on

behalf of a client . . . can constitute transacting business for purposes of § 302(a)(1),[10] even if the

defendant has no other contacts with the forum."). A course of dealing can be established

through as little as "14 currency exchange transactions between" two foreign entities made to a

New York bank. *Al Rushaid*, 28 N.Y.3d at 325.

      The Liquidators have demonstrated that HSBC Suisse used U.S. correspondent accounts

at least "147 times over a period of over ten years" to send and receive payments between it and

Sentry. Opp'n at 9, ECF No. 211; *see also* Joyce Decl. Exs. 37–38. The repeated use of

correspondent accounts demonstrates Defendant's purposeful availment of the banking system of

New York and the United States. Whether discretionary or execution-only, Defendant chose to

use New York-based accounts while foreign options existed.

      The Liquidators have also provided a decision of the Privy Council, explaining that BVI

law can look to the registered shareholder as legal owner. *See Skandinaviska Enskilda Banken

AB (Publ) v. Conway*, [2019] UKPC 36 ¶¶ 2, 4, 88, available at https://www.jcpc.uk/cases/docs/

jcpc-2017-0022-judgment.pdf. The Privy Council explained that the "registered holder of

redeemable shares, . . . not [the mutual funds, on whose behalf the holder subscribed], was the

person entitled to be paid the proceeds of the redemption of the shares, and it was the person to

whom, in law, the payment was made." *Id.* ¶ 88. It made no difference whether the company in

which the holder invested knew that the holder was a nominee for other entities. *Id.* Here,

Defendant was entitled to be paid proceeds of the shares under Article 8 of the Fairfield Funds'

Articles. Molton Decl. Ex. 1, ECF No. 253 ("The Company shall be entitled to treat the

registered holder of any share as the absolute owner thereof and accordingly shall not be bound

---

[10]    Section 302(a)(1), New York's long-arm statute, "authorizes personal jurisdiction over a foreign defendant
for causes of action that arise out of 'transact[ing] any business within the state,' whether in person or through an
agent." 70 F.4th at 640 (quoting C.P.L.R. § 302(a)(1)).

to recognise any equitable or other claim to, or interest in, such share on the part of any other person."). Defendant was the registered shareholder of investments in the Fairfield Funds, it was entitled to be paid the proceeds of the redemption of the shares, and it was the entity to whom payment was made; it makes no difference whether Defendant invested on behalf of others.

### 2. **Defendant's Business Contacts with the Forum**

The Liquidators assert that Defendant "intentionally invested in BLMIS feeder funds Sentry and Sigma knowing that the Funds were designed to subsequently invest that money in New York-based BLMIS. [HSBC Suisse] is subject to this Court's jurisdiction with respect to its Sentry and Sigma redemptions as a result of that conduct." Opp'n at 14, ECF No. 211. Defendant describes the allegations that it knew the subscription payments into the Fairfield Funds would be invested in BLMIS in New York as the unilateral activity of a third-party foreign administrator of the Funds, which Defendant argues is not appropriate to consider under *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). *See* Mem. L. at 9–10, ECF No. 171.

In *Helicopteros*, the Supreme Court found that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros*, 466 U.S. at 418. The Supreme Court found that "one trip" to the forum "for the purpose of negotiating the transportation-services contract . . . cannot be described or regarded as a contact of a 'continuous and systematic' nature . . . ." *Id.* at 416. The Liquidators, however, have described more substantial contacts here.

First, the Liquidators point to the offering documents given to HSBC Suisse before and during the time it invested to demonstrate that HSBC Suisse intended to channel funds into

BLMIS. Opp'n at 16, ECF No. 211. In August 2018, this Court held that it does not have

personal jurisdiction over certain defendants due to subscription agreements that provided for

consent to jurisdiction in New York for claims "with respect to [the Subscription] Agreement

and the Fund." *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6,

2018). The Liquidators here rely on the subscription agreements and private placement

memoranda not to show consent, but to show that when Defendant invested in Fairfield Sentry, it

did so knowing that it would avail itself of the benefits and protections of New York. Opp'n at

16–17. The subscription agreements, in this way, support the Plaintiffs' showing of contacts

with the forum.

In addition, Defendant received memoranda at the time it subscribed into the Fairfield

Funds that explained the objective of the funds was to "achieve capital appreciation of its assets

by allocating its assets to an account at Bernard L. Madoff Investment Securities ('BLM'), a

registered broker-dealer in New York, NY." Konanova Decl. Ex. 31, ECF No. 212 (1998 Sentry

Information Memorandum); *id.* Ex. 33 (2006 Sigma Private Placement Memorandum). The

private placement memoranda informed Defendant that the Fairfield Funds utilize a "split strike

conversion" implemented by BLMIS. *Id.* Sentry would allocate no more than 5% in aggregate

of its net asset value in investments other than BLMIS's split strike conversion strategy. *Id.* Ex.

33 at 00002458. Sentry's information memorandum identified BLMIS as the "sub-custodian of

the Fund." *Id.* Ex. 31 at 00000662. These documents show that Defendant was aware at the

time that its investments in Fairfield Sentry was effectively an investment in BLMIS in New

York.

Second, evidence shows that employees of Defendant's affiliate, HSBUS, met and

communicated with the Fairfield Funds' alleged manager, the Fairfield Greenwich Group,

multiple times to conduct due diligence and then shared that information with the Defendant.

Opp'n at 18, ECF No. 211; *see* Konanova Decl. Ex. 9, ECF No. 212 (email from Lakshmi

Chaudhuri of Fairfield Greenwich Group in New York reporting that a "team from HSBC New

York office has requested for a meeting at our office next week to conduct their annual review

on the bank's investment holdings in Sentry."); *id.* Ex. 7 (emails between Defendant and U.S.

affiliate HSBUS, wherein employees discuss whether the "NY team . . . cover[s] Fairfield Sentry

and the Madoff fund."); *id.* Ex. 22 (email to "Peter J Rigg/HBUS/HSBC" about the "NY

Research Committee['s]" meeting concerning the Fairfield Greenwich Group annual report).

Employees of HSBC Suisse communicated with employees of Fairfield Greenwich Group in

New York to discuss investments in the Fairfield Funds. *See id.* Exs. 3–6. These contacts

demonstrate more than mere purchases or a one-time visit to the forum. The Liquidators have

demonstrated facts showing continuous and systemic contacts with the forum.

### 3.  Whether the Defendant's Contacts are Otherwise Appropriate to Support the Court's Exercise of Personal Jurisdiction

The Court will address HSBC Suisse's remaining arguments that the Defendant's alleged

contacts are not jurisdictionally relevant under Supreme Court precedent. Mem. L at 9, 11–14,

ECF No. 171. Defendant argues that the Plaintiffs' allegations amount to little more than

"knowledge that Sentry would invest money it raised in the BVI with BLMIS in New York,"

which it states is "insufficient as a matter of law to support jurisdiction" under *Walden v. Fiore*,

571 U.S. 277 (2014). *Id.*

In *Walden*, the Supreme Court found that a defendant "formed no jurisdictionally

relevant contacts" with the forum state of Nevada as he "never traveled to, conducted activities

within, contacted anyone in, or sent anything or anyone to Nevada." *Walden*, 571 U.S. at 289.

The Supreme Court further stated that it is impermissible to allow the "plaintiff's contacts with

the defendant and forum to drive the jurisdictional analysis." *Id.* As the Supreme Court explained, the "plaintiff cannot be the only link between the defendant and the forum," and "the defendant's conduct . . . must form the necessary connection with the forum State." *Id.* at 285. Nevertheless, personal jurisdiction may be found even where a "defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Id.* at 286.

The Liquidators' allegations and supporting evidence of intentional investment into BLMIS in New York and communications with the Fairfield Greenwich Group, as described above, demonstrate that HSBC Suisse took affirmative actions on its own apart from the conduct of the Plaintiffs. *See, e.g.,* Am. Compl. ¶ 19; Opp'n at 20, ECF No. 211. In addition to providing evidence of meetings with managers of the Fairfield Funds in New York, the Liquidators have shown that the Defendant knew with certainty and intended that by investing in the Funds Defendant's money would enter into U.S.-based BLMIS. Am. Compl. ¶¶ 52–71; Opp'n at 20. This certainty can be found in the Fairfield Funds' contractual obligation to invest at least 95% of the money they received in U.S.-based BLMIS. *See* Konanova Decl*.,* Exs. 32–33 (private placement memoranda of Fairfield Sentry and Fairfield Sigma). Moreover, Defendant conducted due diligence investigations that confirmed the investments would be made with BLMIS in New York. *See id.* Exs. 3–7, 23–30. The relevant contacts were not driven by the conduct of the Fairfield Funds alone; they were the result of Defendant's efforts to invest in BLMIS in New York.

Defendant next argues that the Liquidators' evidence of Defendant's contacts with the United States amount to little more than the stream of commerce theory rejected by *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882–86 (2011), where the Court stated that "it is not

enough that [a] defendant might have predicted that its goods will reach the forum," but rather the defendant must "engage[] in conduct purposefully directed at [the forum]."  Mem. L. at 13, ECF No. 171.  The Liquidators argue that the Defendant did not merely expect that the investments would reach the United States, but rather that Defendant's express purpose of investing in the Fairfield Funds was to invest with BLMIS in New York.  Opp'n at 21, ECF No. 211 ("Liquidators argue that [Defendant] chose to invest in the Funds with the specific purpose of having its clients' money invested in U.S.-based BLMIS, and that it did so while knowing that the Funds were obligated under the investment contracts to facilitate that aim, including by directing at least 95% of funds invested to BLMIS.").  This conduct was purposefully directed at the forum.

The Court thus finds that Defendant's selection and use of U.S. correspondent accounts and communications with Fairfield Greenwich Group support the Court's exercise of jurisdiction over the claims for receiving redemption payments from the Fairfield Funds with the knowledge that the NAV was wrong.  The contacts are not random, isolated, or fortuitous.  The contacts demonstrate HSBC Suisse's purposeful activities aimed at New York in order to effectuate transfers from the Fairfield Funds.  The Plaintiffs have thus provided facts that sufficiently support a prima facie showing of jurisdiction over the Defendant.

**C.  Whether the Claim Arises Out of or Relates to the Defendant's Forum Conduct**

The suit must "arise out of *or relate to* the defendant's contacts with the forum."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. ----, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original).  "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required.  *Id.* at 1027.  Instead, a court need only find "an affiliation between the forum and the underlying controversy."  *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Defendant argues that the claims "here are not about, and do not arise out of, any investment with BLMIS."  Mem. L. at 3, ECF No. 171.  However, the Liquidators seek imposition of a constructive trust on funds received with knowledge that the NAV was inflated. Am. Compl. ¶¶ 145–55.  The issue of knowledge of the inflated NAV is inextricably tied to the Defendant's investments with New York-based BLMIS.  The allegations are directly related to Defendant's investment activities with BLMIS through the Fairfield Funds.  The Defendant's contacts with the United States, in investing in the Fairfield Fund and communicating and meeting with Madoff form a "sufficiently close link" between the defendant, the forum and the litigation concerning Defendant's activities in the forum.  *See MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*, 2021 WL 4461773, at *3 (S.D.N.Y. Sept. 29 2021) (quoting *Ford Motor Co.*, 141 S. Ct. at 1032).

**D.  <u>Whether Assertion of Personal Jurisdiction is Reasonable</u>**

If a defendant has sufficient minimum contacts, the Court must then ask "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  Where the plaintiff "makes the threshold

showing of the minimum contacts required for [exercising personal jurisdiction], a defendant

must present a compelling case that the presence of some other considerations would render

jurisdiction unreasonable." *MSP Recovery Claims, Series LLC*, 2021 WL 4461773, at *3

(quoting *Bank Brussels Lambert*, 305 F.3d at 129).  Factors the Court will consider include the

burden on the defendant; the interests of the forum in adjudicating the case; the plaintiff's

interest in obtaining convenient and effective relief; the interstate judicial system's interest in

obtaining the most efficient resolution of controversies; and the shared interest of the states in

furthering fundamental substantive social policies.  305 F.3d at 129.

The Defendant argues that "the United States' interest in adjudicating this dispute is

minimal at best. The dispute is between foreign parties arising under foreign law pursuant to a

foreign contract for the return of cash sent between two foreign countries in a purely foreign

transaction." Mem. L. at 21, ECF No. 171.  Defendant further argues that the proceeding is non-

core, ancillary, and only tenable due to Chapter 15 recognition. *Id.* at 22 (citing *In re Fairfield

Sentry Ltd.*, 458 B.R. 665, 685 (S.D.N.Y. 2011) (Preska, J.)).

The Defendant's reliance on *In re Fairfield Sentry Ltd.*, 458 B.R. 665, is misplaced.  In

that case, the District Court determined whether the proceeding was core or non-core; it did not

determine whether adjudication or jurisdiction in the United States was reasonable.  *See id.* at

675.  Further, the Court has already found that it has subject matter jurisdiction over these

proceedings.  *See In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *8 (Bankr. S.D.N.Y. Aug. 6,

2018).  Chapter 15 allows for recognition of this proceeding and indicates that the United States

has an interest in adjudicating the case.

Defendant argues it is burdened by the potential exposure to civil and criminal liability.

Mem. L. at 22, ECF No. 171.  In support of this argument, Defendant cites to a ruling in which

the Court granted in part and denied in part a motion seeking relief as to the order staying the action and seeking expedited initial disclosures on beneficial holders.  *Id.*; *see* Bench Ruling, Adv. Pro. No. 10-03496, ECF No. 799.  This Court based that ruling on a comity analysis in light of the then-uncertain "offshore underpinnings for this litigation in its entirety."  *Id.* at 2.  The Court stated in that ruling that it was "hard-pressed to find any compelling United States' interest in mandating discovery here *at this juncture* of the pending litigation."  *Id.* (emphasis added).

The Defendant has not shown that the interests at stake in that proceeding over ten years ago, are the same as those at stake now.  Although Defendants were previously able to identify specific laws in foreign countries that would have been broken by complying with the Court's prior order, HSBC Suisse now only describes a "potential exposure" to liability.  *See* Hr'g Tr. Oct. 28, 2021, ECF No. 168 ("[C]omplying with that order would've required my clients to break the law in Switzerland and Luxembourg. And it wasn't just us saying that, Your Honor. The Swiss government submitted a letter from the embassy saying exactly the same thing.").  This Court lifted the stay and required the Defendant to proceed to discovery in November 2021. Order Granting Mot. to Compel, ECF No. 176.  The July 2012 Bench Ruling shows that this Court is capable of alleviating specific burdens identified by a defendant.  The mere potential for exposure to unspecified liability is not a burden which renders exercise of jurisdiction unreasonable.

Defendant argues that there is "no reasonable interest in having this dispute adjudicated here" as the Plaintiffs have "forum shopped their claims to New York" instead of having the claims heard abroad, where they would "most naturally be heard."  Reply at 20, ECF No. 218. Defendant states that there is a burden placed on the forum as the "witnesses and evidence in this action are all overseas. . . ."  *Id.*

The Defendant has demonstrated that this Court's exercise of jurisdiction over it may impose a minimal burden in terms of requiring it to "traverse the distance" to the forum. However, "[e]ven if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010); *see also In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 273 (2d Cir. 2023). HSBC Suisse has participated in this litigation for over ten years. *See, e.g.,* Mot. to Withdraw Reference, ECF No. 2. Defendant is represented by U.S. Counsel and has at least one affiliate operating in the New York area. Opp'n at 3, ECF No. 211; Konanova Decl. Ex. 7 (email from "Kaye-Ann Marsh/HBUS/HSBC" to "Marc GIESBRECHT/PBRS/ HSBC@HSBC" referring to a "NY team"). Furthermore, the United States has a strong interest in ensuring the integrity of its financial systems.

Defendant has alleged that other forums may be able to hear the claims. What it has not done is demonstrate how this forum would fail to provide effective relief. *See MSP Recovery Claims, Series LLC*, 2021 WL 4461773, at *3. Defendant does not explain what interest is impaired by precluding adjudication in another forum or why that interest outweighs other factors in favor of exercising jurisdiction. *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 22 CIV. 6561 (LGS), 2023 WL 395225, at *6 (S.D.N.Y. Jan. 25, 2023). The Defendant has not established that the Court's exercise of personal jurisdiction over it would be unreasonable. The Court thus finds that exercising jurisdiction over the Defendant is reasonable and comports with "traditional notions of fair play and substantial justice . . . ." *See Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154.

**E.**  **Application of the District Court's Opinion on Jurisdiction Under FSIA**

HSBC Suisse filed a letter with this Court on October 11, 2023, stating that the recent opinion in *Pub. Inst. for Soc. Sec. v. Picard (In re BLMIS)*, No. 22-cv-8741-GHW, 2023 WL 6143985 (S.D.N.Y. Sept. 20, 2023) ("*PIFSS*"), supports its Motion to Dismiss for lack of personal jurisdiction.  Letter, ECF No. 263.  The Liquidators filed a letter in response arguing that the analysis used by the Court in *PIFSS* is inapplicable to an analysis of personal jurisdiction.  *See* Letter in Response, ECF No. 264.

The Foreign Sovereign Immunities Act provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."  28 U.S.C. § 1604.  Under the third clause of the commercial activities exception to the FSIA, a foreign sovereign is not immune from a Court's jurisdiction in a case "in which the action is [i] based . . . upon an act outside the territory of the United States [ii] in connection with a commercial activity of the foreign state elsewhere and [iii] that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).

*PIFSS* found that the "redemption request and receipt of funds" by the defendant, a foreign government entity, "did not have a direct effect in the United States."  *PIFSS* at *8.  The "possibility that the transfer transited through a New York correspondent bank on its way between the foreign bank accounts of two foreign entities does not matter—the brief transit of funds through a U.S. correspondent account is not 'legally significant.'"  *Id.* at *7.  The Court in PIFSS further stated that because the defendant's "redemption request to Fairfield Sentry in December 2003 occurred after BLMIS's most recent payments to Fairfield Sentry, it cannot be the case that PIFSS's redemption request triggered any movement of funds from BLMIS to Fairfield Sentry."  *Id.*

Defendant argues that the Liquidators' arguments here are the same as those posed by the Trustee made in *PIFSS*.  Bamberger Letter at 2, ECF No. 263 ("Here, the Fairfield Liquidators make the identical argument, arguing at length that the HSBC Defendants are subject to personal jurisdiction because redemption payments made by the Fairfield Funds from their bank account in Ireland were momentarily routed through correspondent bank accounts in New York.").  HSBC Suisse asserts that the "Second Circuit has recognized, the analysis under 28 U.S.C. § 1605(a)(2) and the minimum contacts under the due process clause for personal jurisdiction are 'essentially identical.'"  *Id.* (quoting *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 760–61 (2d Cir. 1998)).

The Liquidators argue that *PIFSS* is inapplicable to this case as the "tests for FSIA's commercial activities exception and for personal jurisdiction are not the same."  Letter in Response at 1, ECF No. 264.  The Liquidators further argue that "there is no indication in any of the case law cited by the HSBC Defendants that . . . activity not sufficient for the commercial activities exception to apply is necessarily also not sufficient for personal jurisdiction . . . ."  *Id.* at 2.The Court in *PIFSS* denied the Public Institution for Social Security's appeal of the Court's order denying dismissal for lack of personal jurisdiction.  *Pub. Inst. for Soc. Sec. v. Picard*, No. 1:22-CV-8741-GHW, 2023 WL 3293648, at *1 (S.D.N.Y. May 5, 2023).

*PIFSS* explained that an appeal based on personal jurisdiction was not warranted at the time, as this Court relied on evidence, "in combination with Trustee's complaint, that supported a prima facie case of jurisdiction over PIFSS."  *Id.* at *5.  The *PIFSS* Court stated:

> As the Bankruptcy Court recognized, to survive a motion to dismiss for lack of personal jurisdiction, the Trustee was only required to "make a prima facie showing that jurisdiction exists." Order at 8 (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018)). And to satisfy that requirement, the plaintiff need only plead "good faith, legally sufficient allegations of jurisdiction"; no further proof of

jurisdictional facts is required. *Id.* at 9 (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ*, S.A., 722 F.3d 81, 84–85 (2d Cir. 2013)).

*Id.* at *4. *PIFSS* focused on the defendant's challenge to the Court's subject matter jurisdiction on the basis of foreign sovereign immunity. 2023 WL 6143985, at *1 ("This case sits at the crossroads of bankruptcy and sovereign immunity."). HSBC Suisse moves to dismiss based on personal jurisdiction. HSBC Suisse is not a foreign sovereign, nor is it challenging subject matter jurisdiction. *PIFSS* is not clearly applicable to this situation, and Defendant's proffered case law does not convince the Court otherwise.

In *Rein*, the Second Circuit recognized "the two kinds of jurisdiction—subject matter and personal—are interrelated under the FSIA." *Rein*, 162 F.3d at 759. The Second Circuit recognized that it is possible to make a finding on subject matter jurisdiction without making a finding on personal jurisdiction. *Id.* ("It does not follow, however, that a court cannot decide issues of subject matter jurisdiction without at the same time making definitive findings as to personal jurisdiction."). Because review of personal jurisdiction is not necessary for review of subject matter jurisdiction, the Second Circuit "conclude[d] that the issues of subject matter jurisdiction and personal jurisdiction are not inextricably intertwined in th[at] case." *Id.* The Second Circuit then explicitly rejected the argument that "under the FSIA, personal jurisdiction and subject matter jurisdiction are interrelated sufficiently to justify the exercise of pendent appellate jurisdiction." *Id.* at 760.

The Second Circuit explained that by finding a direct effect in the United States in a prior case, it "necessarily had also decided that the defendant had minimum contacts with the United States sufficient to establish personal jurisdiction over it in an American forum without violating the requirements of due process." *Id.* (analyzing *Hanil Bank v. PT. Bank Negara Indonesia (Persero)*, 148 F.3d 127 (2d Cir. 1998)). "The finding of subject matter jurisdiction under the

commercial activities exception also entailed a finding of minimum contacts, and that finding

was therefore conclusive on the personal jurisdiction question as well." *Rein* 162 F.3d at 760.

Whether the "issues of subject matter jurisdiction and personal jurisdiction were inextricably

intertwined" depended on the specific issues of personal and subject matter jurisdiction at issue.

*Id.* at 760–61.

HSBC Suisse would invert the Second Circuit's reasoning to conclude that where there is

no direct effect, there are no minimum contacts. *See id.* There is no support in *Rein* for this

proposition.[11] Furthermore, the Court cannot rule on a challenge to its exercise of personal

jurisdiction over a defendant, who is not a foreign sovereign, based on whether that defendant's

conduct would meet the standard for exercising subject matter jurisdiction under an exception to

FSIA. *See Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for A.W. Galadari*, 810 F.

Supp. 1375, 1388 (S.D.N.Y. 1993), *rev'd on other grounds*, 12 F.3d 317 (2d Cir. 1993)

("Personal jurisdiction under the FSIA is a matter separate and apart from the issue of subject

matter jurisdiction. "); *see also Walpex Trading Co. v. Yacimientos Petroliferos Fiscales

Bolivianos*, 712 F. Supp. 383, 390 (S.D.N.Y. 1989) ("Personal jurisdiction over foreign

sovereign instrumentalities under the FSIA involves a scrutiny distinct from the subject matter

jurisdiction inquiry . . . .").  The reasoning in *PIFSS* is thus inapplicable to the issue of personal

jurisdiction.

In its November 28, 2023, Letter, the Defendant argues that the arguments made in

support of a finding for "direct effect" are "precisely the same type of supposed U.S. contacts on

---

[11]     Defendant also relies on *Boeing Co. v. Egyptair*, No. 05-5986-CV, 2007 WL 1315716, (2d Cir. May 7, 2007) in support of its argument.  *Boeing* analyzed jurisdiction in the same context as *Rein* to find that commercial contacts sufficient for exceptions to FSIA were also sufficient for minimum contacts.  2007 WL 1315716, at *2 ("Assuming, arguendo, that the minimum contacts requirement of the Due Process Clause applies to foreign instrumentalities such as Misr, . . . we have no difficulty finding that there were sufficient minimum contacts here.").

which the Liquidators seek to ground personal jurisdiction in this case."  Nov. 28 Letter at 2,

ECF No. 268.[12]  This again elides the differences between the standards for personal jurisdiction

and exceptions to foreign sovereign immunity.  Defendant's argument also flattens the Court's

analysis of conduct for subject matter and personal jurisdiction when it states "to the extent that

there is daylight between the tests for satisfying the commercial activities exception and personal

jurisdiction, more significant contacts are required to establish the personal jurisdiction under the

Constitution than subject matter jurisdiction under the commercial activities exception."  *Id.* at 3.

The Court does not use a single metric to gauge personal jurisdiction and exceptions to sovereign

immunity.  The tests are different.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES the Defendant's Motion to Dismiss the

Amended Complaint.  The Liquidators shall submit a proposed order consistent with the findings

in this decision in accordance with Local Bankruptcy Rule 9074-1(a).

**IT IS SO ORDERED.**


Dated: New York, New York
        January 4, 2024

                    /S/ John P. Mastando III
                    THE HONORABLE JOHN P. MASTANDO III
                    UNITED STATES BANKRUPTCY JUDGE

---

[12]      The Liquidators filed a letter in response, stating that they stand on the arguments previously put forth.
Dec. 1 Letter, ECF No. 269.